IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>TUG ROBERT J. BOUCHARD CORPORATION,<br><br>　　　　　　Post-Effective Date Debtor. | Chapter 11<br><br>Case No. 20-34682 (DRJ)<br><br>(Jointly Administered under 20-34758)<br><br>**Re: Docket Nos. 12, 13** |

### RESPONSE OF PEAK CREDIT LLC AND 507 SUMMIT LLC TO DEBTORS' THIRD AND FOURTH OMNIBUS OBJECTION TO CLAIMS

Creditors Peak Credit LLC ("Peak") and 507 Summit LLC ("507") respond to the Debtors' Third [Dkt. No. 12] and Fourth Omnibus Objections [Dkt. No. 13] (together, the "Objections") to certain of their claims, as follows:

### INTRODUCTION

1.　　The claims at issue are for unpaid invoices relating to materials furnished and services provided the Debtors prepetition by the prior holders of the claims.[1]

2.　　Each claim attaches the invoices on which it is premised, pursuant to Rule 3001(c), aside from a handful of claims that are the subject of an insufficient documentation objections (discussed below).

3.　　Each invoice on its face calls for accrual of interest on the face amount thereof if payment was not made within 10-30 days ("Late Charge").

4.　　The subject claims are accordingly (a) the Invoiced amount, and (b) Late Charges accrued thereon, to the petition date. The breakdown of each is included in the respective claims, on a table located either on the last page or immediately following the claim form.

---

[1] Copies of the claims that are the subject of the Objections are hyperlinked from the proposed orders annexed thereto.

5. The principal objection asserted, is to the Late Charge component. (See Third Omnibus Objection, Proposed Order, Ex. A, Row Nos. 1, 3-52, 54-60 and Fourth Omnibus Objection, Proposed Order, Ex. A, Row Nos. 2-67.)

6. The Objections also seek to reduce the amount of certain claims on the ground that certain invoices on which they are premised, not identified in the Objection ("Disputed Invoices") exceed the corresponding purchase orders or are otherwise not supported by the Debtors' books and records. (Third Omnibus Objection, Proposed Order, Ex. A, Rows 53-60 and Fourth Omnibus Objection, Proposed Order, Ex. A, Rows 1, 60-67.)

7. In addition, the Fourth Omnibus Objection seeks to disallow certain claims for failure to attach sufficient documentation (the invoices on which they are premised). (Fourth Omnibus Objection, Proposed Order, Ex. D, Rows 77-80.)

8. The Debtors' objections on these grounds should be overruled as and for reasons set forth below.

**RESPONSE TO LATE CHARGE OBJECTIONS**
**Third Omnibus Objection, Proposed Order, Ex. A, Rows 3-45, 50-52, 54-55;**
**Fourth Omnibus Objection, Proposed Order, Ex. A, Rows 2-15, 19-50, 60-62**

9. Peak and 507 dispute the Objections insofar as they seek to disallow Late Charges on invoices issued by subsidiaries of McAllister Towing & Transportation Co., Inc. ("McAllister") and Caddell Dry Dock & Repair Co. Inc. ("Caddell"); specifically, the Objections Peak and 507 challenge are those listed in Third Omnibus Objection, Proposed Order, Ex. A, Rows 3-11 (Caddell) and Rows 12-45, 50-52 and 54-55 (McAllister) and Fourth Omnibus Objection, Proposed Order, Ex. A, Rows 2, 19-50 and 61-62 (McAllister) and Rows 3-15 and 60 (Caddell).[2]

---

[2] Peak and 507 are not challenging the Objections insofar as they seek to disallow Late Charges on invoices issued by other marine transportation service providers.

10. As set forth in the declarations of Steven Kress (of McAllister) and Steven Kalil (of Caddell), attached hereto as <u>Exhibits 1-2</u>, respectively, the Debtors never had an express contract with either but instead paid on the basis of invoices submitted by them.

11. Absent an express contract with a governing law clause, the issue of Late Charge allowance is appropriately governed by New York law, as the Debtors' corporate headquarters is New York (Case 20-34682, Docket No. 1, Response to Item 4 (re: principal place of business)), the respective principal offices of Caddell, McAllister and its subsidiaries are in New York,[3] and for many of the claims the invoices annexed thereto indicates that the place of performance was also New York. *See generally* Restatement (Second) of Contracts § 188 (most significant relationship test).

12. The claims for prepetition Late Charges are appropriately allowed as an account stated under New York law.

13. Under New York law, "[a] plaintiff is entitled to summary judgment on an account stated [cause of action] if it makes a prima facie showing that it sent regular invoices or statements to a debtor and that the debtor did not object to such invoices or statements within a reasonable

---

[3] Peak's claims were acquired from McAllister Towing of Baltimore, Inc., McAllister Towing of Charleston, Inc., McAllister Towing of Connecticut LLC, McAllister Towing of Narragansett Bay, LLC (dba Providence Steamboat Company), McAllister Towing of New York, LLC, McAllister Towing of Philadelphia, Inc., McAllister Towing of Virginia, Inc., Portland Tugboat LLC and Tugz Company LLC. Attached as <u>Exhibit 3</u> is information and documents retrieved from the Secretary of State webpages for the foregoing entities, indicating that their respective principal offices is New York; except as to the Charleston entity, as the South Carolina Secretary of State does not make that information available online, and the New York entity which is not registered with the Secretary of State but whose principal office is of course New York. Note, that the Connecticut entity lists its principal office address as being within the state, but then goes on to list the New York address as the company's mailing address and states that all of its officers work in the New York office of McAllister. Per <u>Exhibit 4</u> hereto, the Secretary of State webpages for McAllister's other subsidiaries also indicate that their respective principal office is in New York. Caddell has just one entity (it owns a shipyard in Staten Island), the address of which is set forth on its invoices which indicates a New York address; but for the avoidance of doubt, its Secretary of State webpage indicating a principal office in New York is attached as <u>Exhibit 5</u>.

time." *Wesco Distribution, Inc. v. Anshelewitz*, No. 06-cv-13444, 2008 WL 2775005 (S.D.N.Y. July 16, 2008). "It is incumbent upon a party in receipt of an account to examine the statement and make all necessary objections … within a reasonable amount of time … A party's failure to object to invoices and statements of account can be construed as agreement that the bills sent to [the party] … were correct and would be paid." *Id*. (citations, internal quotations omitted). "Once a plaintiff has established a prima facie claim for an account stated, the defendant must come forward with documentation of any alleged objection made to the account … Unsubstantiated claims of oral objections do not create a material issue of fact and are insufficient to defeat summary judgment." *Id*. (citations, internal quotations omitted).

14. New York courts have specifically allowed, as an account stated, late interest charges on the face of an invoice, substantially similar to those at issue in this contested matter. *E.g.*, *Carey v. Mui-Hin Lau*, 140 F. Supp. 2d 291, 299 (S.D.N.Y. 2001) (quoting *Davison v. Klaess*, 280 N.Y. 252, 20 N.E.2d 744 (1939)) ("Although the second retainer did not provide for interest charges … '[a]n account stated may include interest even though there was initially no express agreement to pay interest'"; and awarding 12%/year interest on the basis of language in invoices); *R.F. Schiffman Associates, Inc. v. Baker & Daniels LLP*, 147 A.D.3d 482, 483, 47 N.Y.S.3d 277 (1st Dep't 2017) (citing *Archer Management Services, Inc. v. Pennie & Edmonds*, 287 A.D.2d 343, 344, 731 N.Y.S.2d 177 (1st Dep't 2001)) ("Because Baker & Daniels failed to object to late fees in a timely fashion, and because plaintiffs presented at least some evidence of trade practice … the late fee of 1.5% per month mentioned in plaintiffs' invoices became integrated into the parties' contract").

15. Further, New York trial courts also regularly award interest on account stated claims reduced to judgment, at rates other than the statutory rate under N.Y. CPLR §§ 5001 and 5004 (9%/year), where a different rate is supplied in a contract or invoice. *E.g. Carey*, 140 F.

Supp. 2d at 299 (discussed above); *Sklover, Himmel & Bernstein, LLP v. Napoll*, No. 602208/2001, 2002 WL 34684154 (Sup. Ct. N.Y. Co. July 9, 2002) (16%/year on account stated judgment); *Phillips Nizer v. Yien Koo Wang King*, No. 104389/2006, 2007 WL 9220903 (Sup. Ct. N.Y. Co. Mar. 7, 2007) (1%/month on account stated judgment).

16. As set forth in the accompanying declarations, the McAllister and Caddell invoices on which the corresponding challenged claims are premised were submitted to the Debtors in the same manner as all of the original holder's other invoices; no oral or written objection was ever interposed prepetition by the Debtors to said invoices, the Late Charges called for therein or to Late Charges called for in other invoices issued by McAllister or Caddell, all of which have the same language.

17. Further, the Late Charges called for by the subject invoices are customary in the industry and included in invoices issued to the Debtors by a number of marine transportation vendors.  [In re Bouchard Transportation Co., Inc.., Case 20-23682, Docket No. 1247-9.][4]

## RESPONSE TO DISPUTED INVOICE OBJECTIONS
### Third Omnibus Objection, Proposed Order, Ex. A, Rows 53-60;
### Fourth Omnibus Objection, Proposed Order, Ex. A, Rows 1, 60-67

18. Insofar as the Objections challenge claims premised on Disputed Invoices, these claims should be allowed under the doctrine of unjust enrichment and quantum meruit.

19. The Objections do not identify the Disputed Invoices, and the Objections do not allege that the materials and services described therein were not provided.

---

[4] The Objections state that "Claimants have set forth no basis for the allowance of interest." That is false.  The Debtors previously objected to Late Charges reflected in certain claims premised on McAllister invoices, in the First Omnibus Objection. [Case 20-23682, Docket No. 995.] The exact same arguments being made herein as to Late Interest were made by Peak in its response to that objection. [Case 20-23682, Docket No. 1247.]  The Debtors adjourned the hearing on that objection sine die, without having litigated (nor even engaged) on the matter of postpetition interest.

20. Further, it is undisputed that said materials and services constitute "necessaries" under the Commercial Instruments and Maritime Lien Act (CIMLA), 46 U.S.C. §§ 31301-31343;[5] *see generally Martin Energy Services, L.L.C. v. Bourbon Petrel M/V*, 962 F.3d 827, 831 (5th Cir. 2020).

21. As with McAllister and Caddell, none of the other prior holders of the subject claims had contracts with the Debtors, but instead invoiced for materials furnished and services provided.

22. In light of the absence of additional information as to which invoices are disputed, the absence of an express contract, that the parties expected the marine transportation service providers to use their reasonable judgment in maintaining the Debtors' vessels and furnishing necessaries and that the Debtors do not appear to dispute that the materials and services at issue were in fact provided, the Objections should be overruled to the extent they seek to reduce the claim amount on the ground of Disputed Invoice.

23. Stated differently, the Debtors have not made the necessary showing that these claims are unenforceable, under Bankruptcy Code section 502(b)(1).

**RESPONSE TO INSUFFICIENT DOCUMENTATION OBJECTIONS**
**Fourth Omnibus Objection, Proposed Order, Ex. D, Rows 77-80**

24. The Debtors objected to Claim Nos. 272, 510, 512 and 516 for failure to annex the invoices on which they are premised. Those invoices are attached hereto as <u>Exhibit 6</u> (Row 77, re: Claim No. 512), <u>Exhibit 7</u> (Row 78, re: Claim No. 516), <u>Exhibit 8</u> (Row 79, re: Claim No. 272) and <u>Exhibit 9</u> (Row 80, re: Claim No. 510). Each such exhibit includes the breakdown of the claim amount as between the invoice amount and Late Charges. The amount of these claims should

---

[5] The sole asserted basis for recharacterization of the claims from secured to unsecured, is that the sale price for the Wells Fargo collateral did not exceed the debt owed Wells Fargo.

accordingly be modified to that set forth in the respective exhibits; that is, the amount of Claim No. 512 should be modified to $28,133; the amount of Claim No. 516 should be modified to $7,139.05; the amount of Claim No. 272 should be modified to $20,527.50; and the amount of Claim No. 510 should be modified to $119,803.75.

WHEREFORE, the Objections should be overruled insofar as they seek to reduce or disallow the claims identified in Third Omnibus Objection, Proposed Order, Ex. A, Rows 3-45 and 50-60 and Fourth Omnibus Objection, Proposed Order, Ex. A, Rows 1-15, 19-50 and 60-67, and Fourth Omnibus Objection, Proposed Order, Ex. D, Rows 77-80, except as otherwise agreed herein (in the case of Fourth Omnibus Objection, Proposed Order, Ex. D, Rows 77-80, only), and Peak and 507 should be granted such other and further relief as the Court deems just and proper.

Dated: Houston, Texas
November 8, 2021

Respectfully submitted,

/s/ Deirdre Carey Brown
Deirdre Carey Brown
FORSHEY PROSTOK LLP
1990 Post Oak Boulevard, Suite 2400
Houston, Texas 77056
(832) 536-6910
dbrown@forsheyprostok.com
- and -
Jeffrey Chubak (admitted pro hac vice)
AMINI LLC
131 West 35th Street, 12th Floor
New York, New York 10001
(212) 490-4700
jchubak@aminillc.com
*Attorneys for Creditors Peak Credit LLC and 507 Summit LLC*